**EMPLOYERS REINSURANCE CORP.**
**v. MUELLER.**

No. 12336.

Court of Civil Appeals of Texas. Galveston.

Dec. 20, 1951.

R. H. Whilden, Barksdale Stevens, and W. J. Williamson, Houston, for appellant.

Helm & Jones, Albert P. Jones, Mabel G. Howell, Houston, for appellee.

CODY, Justice.

This appeal is from a judgment which awarded appellee A. H. Mueller workmen's compensation benefits for total and permanent disability in a lump sum of $8,259.69. Appellee received his injury on December 1, 1948, while employed at the Houston refinery of the Shell Oil Company as a pipe fitter's helper. Appellee did not file his claim for compensation with the Industrial Accident Board until September 1, 1949, which was nine months after the date he was injured. Appellant compensation carrier predicates its appeal upon ten formal points which state—in one form or another—that appellee failed to show "good cause" for his failure to file his claim for compensation prior to September 1, 1949. Indeed, it is appellant's principal contention that the jury's answers to the special issues relating to "good cause" for appellee's failure to file his claim within six months from the date of his injury "is directly contrary to plaintiff's (appellee's) own testimony, with which he is bound as a matter of law."

It was undisputed that appellee failed to file his claim within six months from December 1, 1948, the date of his injury, as required by R.C.S. Art. 8307, Section 4a, Vernon's Ann.Civ.St. art. 8307, § 4a. In order for appellee to prosecute this proceeding for compensation, he must come within this provision of the cited statute: "For good cause the board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to * * * the filing the claim before the board."

While working on December 1, 1948, appellee fell from 10 to 12 feet from a scaffold, and was paid workmen's compensation for 12 days. On December 14, following, he returned to work and was assigned to light duty, and after about six weeks, was—at his request—returned to his usual duties as a pipe fitter's helper, but was not able to do his regular work, and the man with whom he worked did the heavy work. He continued seeing the company doctor and taking light treatments until August 11, 1949, when he reported off to see a doctor of his own choice because, he testified, "I was in the shape where I could not work to hold the job or to hold out." Dr. Tyner, whom he saw, found from X-ray pictures that appellee had a serious condition in the cervical spine, and a possible ruptured disc. On August 16, 1949, appellee was referred to a bone specialist by the company doctor, who also reported that appellee had sustained no serious injury.

While its contention in the trial court was that appellee's injury was trivial, appellant's contention on appeal is merely that appellee failed to make out a case to go to the jury on "good cause" for his tardy filing of his claim for compensation; or, in any case, that the jury's findings thereon were against the great weight of the evidence.

In answer to special issues, the jury found: (11) that following appellee's injury on December 1, 1948, and prior to his filing his claim for compensation, the company doctors advised appellee that he did not, and would not, have any serious disability from his injury; (12) that appellee believed such advice was true until about the time his claim was filed; (13) that such belief on appellee's part caused him not to file his claim for compensation up until the time it was filed; and, (14) that a reasonably prudent person under the same or similar conditions would have, for such reason, delayed the filing of his claim for such length of time.

Appellant concedes that under Texas holdings, where it is established that a compensation claimant had relied upon the advice of company doctors that his injuries were trivial and temporary in nature, and his evidence to that effect stood alone, such evidence would be sufficient to raise

the issue of good cause to go to the jury. Martin v. Travelers Insurance Co., Tex. Civ.App., 196 S.W.2d 544. But, as stated above, it is appellant's contention that the answers of the jury to the issues on "good cause" is "directly contrary to plaintiff's own testimony with which he is bound as a matter of law." See Stanolind Oil & Gas Co. v. State (on motion for rehearing), 136 Tex. 5, 26, 145 S.W.2d 569.

Appellant does not deny that appellee's evidence produced before the jury included evidence that the company doctors told him that his injuries were slight and of a temporary nature. Indeed, the company doctors admitted as much, and were still of that opinion at the time of the trial. Nor does appellant deny that appellee's evidence was also to the effect that he believed such company doctors' advice, and that except for such advice he would not have delayed filing his claim for compensation, etc. But appellant contends that appellee's own testimony shows conclusively that neither such advice, nor appellee's reliance thereon, was the cause for appellee's failure to file his claim within the six months period.

On the trial appellee testified that about the time he returned to work, which was some two weeks after his injury, he received claim forms from the Industrial Accident Board, which he took to one Grossheim, who was the head of the company's Safety Department, and asked him what should be done about them, and was informed by Grossheim not to worry, everything had been taken care of. The following questions were then asked of, and answers were made by, appellee:

"Q. What did you understand him to mean by that statement, that they had done taken care of them? A. I thought they had filled them out, I thought they had filled the forms out, which I showed him, the ones the Accident Board had sent me.

"Q. You knew at that time you hadn't signed any forms? A. I didn't know whether I had to.

"Q. But you knew you had not signed them? A. Yes, sir.

"Q. You did file your claim with the Industrial Accident Board along about September 1, 1949? A. Yes, sir.

"Q. And by that time you knew the company hadn't taken care of it, had not filed claim with the Industrial Accident Board for you? A. Not until after I taken off, that was on the 11th of August.

"Q. How did you find out that the company had not filed the claim for you? A. Mr. Grossheim phoned, and I asked him.

"Q. When did he phone you? A. On the 12th or 13th of August."

The doctrine of the Stanolind Oil & Gas Co. case, supra, invoked by appellant cannot operate here to defeat appellee's positive testimony that he relied on the company doctors' advice, and that was the reason he did not sooner file his claim. While he did positively testify that he thought the company had filed his claim for him, he did not testify that such was his reason for not filing his claim. The most that can be made of appellee's testimony was that his reason for not filing his claim in December 1948, was because he then thought the company had filed his claim for him. At that time, appellee thought his injury was negligible, and he knew that he had received full compensation while he was not at work, and that he was getting full pay when he returned to work, though he was performing less than his full work.

But it may well occur to a layman that a claim for compensation for negligible injury is a different claim from one for complete and total disability. The reason, according to him, for not filing his claim sooner, was because he believed the company doctors' advice. No doubt a lawyer might well consider that a claim once filed could be amended at any time. But appellee was a layman, and, as noted, knew he was getting better treatment when he returned to work than he was strictly entitled to. The jurors, as laymen, believed his testimony as to the reason for not sooner filing his claim.

We cannot hold, as a matter of law that appellee did not show good cause for

not filing his claim until September 1, 1949. He consulted other doctors, and then placed his claim with his lawyers on August 24, 1949, who filed his claim on September 1.

Judgment affirmed.