**PRYOR et ux. v. BUNCH et al.**

**No. 2702.**

Court of Civil Appeals of Texas. Waco.

Sept. 26, 1946.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, and W. E. Stone, of Jacksonville, for appellants.

Simmons & Jacobs, of Corsicana, for appellees.

TIREY, Justice.

Mrs. Minnie Bunch, for herself and as next friend for her minor daughter, brought this suit in the district court of Navarro county for injuries resulting in death to her husband caused by injuries he sustained by coming in contact with an automobile operated by defendants on the highway in Navarro county. Defendants filed their plea of privilege to be sued in Cherokee county. On trial to the court without the aid of a jury their plea of privilege was overruled and they have perfected their appeal to this court.

This order is assailed solely on the ground that: "There being no competent testimony proving or tending to prove that the defendant, Mrs. T. A. Pryor, was guilty of any trespass or of any act of negligence which was the proximate cause of the death of John Bunch, and it being just as reasonable an inference that the sole proximate cause of the death of John Bunch was his own conduct in suddenly running from the side of the road into the side of the defendants' car, the trial court erroneously overruled defendants' plea of privilege."

Plaintiffs' witness Hickerson testified substantially as follows: That he lived on the Oaks golf course, which lies adjacent to Highway 75, one-half mile north of the city limits of Corsicana; that the golf course lies east of Highway 75; that he and deceased and two others started to play a golf game on the afternoon of October 26, 1945; that the deceased Bunch pulled his ball on his first stroke and that it went out of bounds and rolled across the highway; that deceased then made his second shot and thereafter he went across the highway to pick up his first ball; that he saw deceased cross the highway and recover his ball; "* * * I went over to check the balls while he went back to get his first ball; I checked the first ball and it was his and I went on to check the second ball and after I got over the ball I was facing the highway looking down and I heard an impact like two cars going to-

gether and I looked up and saw what happened * * *. To me it sounded like two cars had run together; it was a terrific noise * * *. When I looked up I saw a car going by and saw his body in motion"; that he did not see the car strike Bunch but he watched the car after it went down the road and there were no other cars on the highway at that particular point; "I went immediately to him of course and he was at an angle off the highway—not on the pavement; the nearest point to the pavement was his head, it was 12 or 14 inches off the pavement, and his feet were at a 75 degree angle from the pavement"; that when he got to Bunch's body he was lying flat on his back with his hands on his chest and that he was breathless; that he saw a scar on his forehead over the left eye and later he saw his right leg was mangled; that he did not hear any horn sounded or any noise whatever, nor did he hear any screeching of brakes and there were no marks on the highway of brakes having been applied to the car. He saw some "tees" on the pavement, picked up Bunch's glasses about three feet off the pavement, and the "tees" were in a semicircle on the pavement back to where his body lay a distance of 30 or 35 feet; that the "tees" extended all the way to the black marker that marked the center of the highway; that Bunch's body came to rest, according to his judgment, 30 or 35 feet from the place where the accident happened; that the automobile he saw when he looked up traveled a distance of about 150 yards before it came to a stop; that the point where the accident happened the road was clear and unobstructed for a distance of 300 yards south and about 250 or 275 yards north, and that after you got about 250 or 275 feet north from the point of the accident on the highway there is a small hill that obstructs the view after you get beyond that; that he examined the automobile that he saw and that the right-hand corner of the right fender was bent or crushed in and on the right-hand corner of the windshield it had a small crease three or four inches in diameter with one spot of blood on it; that the car was traveling south on the highway; that he saw and talked to Mr. and Mrs. Pryor, the occupants of the car, after the accident.

Plaintiffs also tendered in evidence a part of the deposition of T. A. Pryor, one of the occupants of the car. He testified in substance that he was owner of the automobile in question; that he and his wife were in the car on the afternoon the accident happened and that they were coming from Fort Worth to Rusk; that they left Fort Worth between 1:30 and 1:45 p. m., and that they had traveled to Fort Worth in order for his wife to see a doctor; that the doctor had been treating his wife for arthritis and that this trip was for a routine checkup.

"Q. Did the car in which you and your wife were riding strike a man on Highway 75? A. A man struck our car.

"Q. At about what time did this occur? A. Approximately 4:00 o'clock P. M.

"Q. Who was driving your car at the time? A. My wife.

"Q. About how far away were you when you first saw this man whom you struck? A. Between 150 and 200 feet.

"Q. Was the road clear and unobstructed? A. Yes.

"Q. Where was he and what was he doing? A. When I first saw him he was running across the highway.

"Q. Did you sound your horn? A. No, I was not driving.

"Q. Did you apply your brakes? A. No, I was not driving.

"Q. Were your brakes in good working order? A. Yes.

"Q. When your car struck him, where was he with reference to the black center line? A. When he struck our car he was approximately 20 inches to my left of the center stripe.

"Q. What part of your vehicle first struck him? A. He first struck my car on the right front fender.

"Q. Was he thrown against other parts of the car? A. I did not see him strike any other part of the car.

"Q. Where did his body come to rest? A. Near the center of the highway.

"Q. How long before he was struck did you discover his presence on the highway? A. I don't know.

"Q. Was your car on the left side of the road when this man was struck? A. Yes.

"Q. Where were your right wheels with reference to the black line on the highway? A. Approximately 20 inches to my left of the center stripe.

"Q. If you had pulled to your right or remained in the right lane, isn't it true that you would have missed him? A. I don't know, since I have no way of knowing where he would have been when we reached him. * * *

"Q. How far down the highway did you travel before your car was brought to a complete stop? A. The car was brought to a substantial stop some 30 feet from the injured man, where I got out, and my wife parked the car some 75 to 100 feet down the highway.

"Q. What did you do after that? A. I ran back to the injured man."

The foregoing is substantially the pertinent testimony tendered. The trial court in his order overruling the plea of privilege held: "and being of the opinion that a trespass was committed by defendants in Navarro county, Texas, and that this action is based upon such trespass, * * * overrule defendants' plea of privilege."

Appellants rely upon the opinions of this court in Texas Pacific Coal & Oil Co. v. Wells, Tex.Civ.App., 151 S.W.2d 927 and Comet Motor Freight Lines v. Holmes, Tex.Civ.App., 175 S.W.2d 464; and the opinions in Hendren v. Snyder, 143 Kan. 34, 53 P.2d 472 and Surkey v. Smith, Tex. Civ.App., 136 S.W.2d 893. We have carefully reviewed the foregoing authorities and we believe that the factual situation here presented distinguishes the case at bar from each of the foregoing cases. We think that the testimony adduced is sufficient to sustain the findings expressed and implied by the trial court to the effect that appellants had committed a trespass in Navarro county, which proximately caused the injuries resulting in death to John Bunch. Texas Farm Products Co. v. Johnson, Tex.Civ.App., 190 S.W.2d 178. See also: Allan v. Garza, Tex.Civ.App., 194 S.W.2d 814; Martin v. Cable, Tex.Civ. App., 140 S.W.2d 894; Columbia Fuel Corp. v. Summers, Tex.Civ.App., 134 S.W.2d 694; Stovall v. Whatley, Tex.Civ.App., 183 S.W.2d 672; Heard & Heard v. Kuhnert, Tex.Civ.App., 155 S.W.2d 817; Firestone Tire & Rubber Co. v. Chipman, Tex. Civ.App., 194 S.W.2d 609; Jackson v. Mc-Clendon, 143 Tex. 577, 187 S.W.2d 374;

Accordingly, the judgment of the trial 3 Tex.Jur. 1063.

court overruling appellants' plea of privilege is affirmed.